# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

IGNACIO ROJO and ARTEMIA ROJO,

              Plaintiffs,

    v.                                             Case No. 09-CV-230

BEAR STEARNS RESIDENTIAL MORTGAGE
CORPORATION and
BANK OF AMERICA, N.A.,
as Successor by Merger to LASALLE BANK, N.A.,
as Trustee for Certificate Holders of Bear Stearns
Asset Backed Securities I LLC, Asset-Backed
Certificates, Series 2007-HE5,

              Defendants.

_____

# ORDER

      This action arises out of a residential mortgage transaction. Plaintiffs Ignacio and Artemia Rojo claim that defendants Bear Stearns Residential Mortgage Corporation ("Bear Stearns") (as successor in interest to Encore Credit Corp. ("Encore")) and Bank of America, N.A. ("Bank of America") (as Successor by Merger to LaSalle Bank, N.A., as Trustee for Certificate Holders of Bear Stearns Asset Backed Securities I LLC, Asset-Backed Certificates, Series 2007-HE5), violated certain provisions of the Truth in Lending Act, 15 U.S.C. § 1601 *et. seq.* ("TILA") and Federal Reserve Board Regulation Z, 12 C.F.R. part 226. Specifically, plaintiffs seek rescission of their mortgage and recovery of statutory damages from defendants for their alleged failure to meet TILA disclosure requirements. (Compl. ¶ 1). This matter is before the court on plaintiffs' motion for summary judgment. This matter is also

before the court on defendants' motion for summary judgment. For the reasons stated below, the court grants plaintiffs' motion for summary judgment. The court denies defendants' motion for summary judgment.

## BACKGROUND

On March 20, 2007, plaintiffs obtained a $117,000 mortgage loan from Encore, in order to refinance their prior existing debt incurred for personal, family, and household purposes. (Pls.' Resp. Defs.' Proposed Statements of Material Facts [PSMF]) ¶1). The closing of the loan was originally scheduled to take place on March 19, 2007, but it actually took place on March 20, 2007. (Defs.' Resp. Pls.' PSMF ¶ 9).

According to plaintiffs, at the closing of the mortgage, they were provided with three copies each of the TILA Notice of Right to Cancel ("NORTC") form. (*Id.* at ¶ 13). Plaintiffs assert that they each signed and dated one copy of the NORTC and returned it to the closing agent. (Pls.' Statement of Material Fact ¶ 16). Plaintiffs also contend that they retained the four remaining copies of the NORTC after the closing. (*Id.*). On the NORTC forms retained by plaintiffs, the date of the transaction was printed as March 19, 2007, and the date by which plaintiffs had to send the notice of cancellation to Encore was left blank. (Pls.' Additional Statements of Material Facts [ASMF] ¶ 24). On the other hand, in discovery, defendants produced two copies of the NORTC forms that had the printed closing date of March 19, 2007, crossed out and "March 20, 2007" handwritten in, and a mark that appears to be initials written above the handwritten date. (*Id.* at ¶ 28). These copies also had

"March 23, 2007" handwritten in for the cancellation date. (*Id.*). These copies of the NORTC forms were the only notices provided to the defendants in connection with the transfer and assignment of plaintiffs' loan. (Middlebrooks Aff. ¶¶ 3-4, Ex. A) (Docket #28). In connection with their loan closing, the plaintiffs both executed an Acknowledgment of Receipt of TILA disclosures. (Tillman Decl., Ex. C) (Docket #35-3).

Plaintiffs refinanced their loan with Countrywide Bank on or around August 29, 2008. (Pls.' ASMF ¶ 32). On October 28, 2008, the plaintiffs sent a letter seeking to rescind the loan obtained on March 20, 2007. (Pls.' ASMF ¶ 32; Tillman Decl., Ex. D). Defendants have refused to rescind the loan. (Pls.' ASMF ¶ 33). On March 3, 2009, plaintiffs filed their initial complaint seeking to rescind the loan based on defendants' alleged failure to comply with TILA disclosure requirements. With these facts in mind, the court now turns to the issue at hand.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *McNeal v. Macht*, 763 F. Supp. 1458, 1460-61 (E.D. Wis. 1991). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

"The initial burden is on the moving party . . . to demonstrate that there is no material question of fact with respect to an essential element of the nonmoving party's case." *Delta Consulting Group, Inc. v. R. Randle Constr., Inc.,* 554 F.3d 1133, 1137 (7th Cir. 2009) (quoting *Cody v. Harris*, 409 F.3d 853, 860 (7th Cir. 2005)). Once the movant satisfies this initial burden, the burden then shifts to the nonmoving party who "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Doe v. Cunningham*, 30 F.3d 879, 883 (7th Cir. 1994) (quoting *Anderson*,

477 U.S. at 248). There is no issue for trial unless the nonmoving party demonstrates that there is *sufficient evidence* in the nonmoving party's favor for a jury to return a verdict for that party. *Anderson*, 477 U.S. at 249. If the evidence is "merely colorable" or is "not significantly probative," summary judgment may be granted. *Id.* Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact. In ruling on a summary judgment motion, the court must view the evidence plus all inferences reasonably drawn from the evidence in the light most favorable to the non-moving party. *TAS Distributing Co., Inc. v. Cummins Engine Co., Inc.*, 491 F.3d 625, 630 (7th Cir. 2007).

## DISCUSSION

In support of their motion for summary judgment, the plaintiffs argue that the undisputed facts establish a violation of Regulation Z and TILA because plaintiffs were not provided with accurate copies of the NORTC. Specifically, plaintiffs assert that the NORTC forms they received at the closing did not state the date that the rescission period expired as required by 12 C.F.R. § 226.23(b)(5) and that the date of the closing was also incorrect. Defendants also move for summary judgment arguing that plaintiffs' claim that they were provided incomplete NORTC forms is undermined by their own evidence and, further, that plaintiffs have failed to rebut the presumption of receipt which arises when a debtor signs an acknowledgment at the closing confirming delivery of the requisite disclosures. *See* 15 U.S.C. § 1635(c).

## I.     Alleged Violation of TILA

TILA provides that borrowers have the right to rescind a loan transaction. Rescission is "a process in which the creditor terminates its security interest and returns any payments made by the debtor in exchange for the debtor's return of all funds or property received from the creditor (usually the loan proceeds)." *Andrews v. Chevy Chase Bank*, 545 F.3d 570, 573 (7th Cir. 2008) (citing 15 U.S.C. §1635(a)). Here, plaintiffs request rescission of their loan, arguing that defendants violated TILA by failing to provide adequate notice of plaintiffs' right to cancel the loan transaction.

TILA requires that loan documents state specifically the last date on which a borrower may rescind the loan agreement without penalty. 15 U.S.C. § 1635(a)(2); 12 C.F.R. § 226.23(b)(5). This "buyer's remorse" provision allows borrowers, such as the plaintiffs, three business days to rescind a consumer loan that uses their principal dwelling as security. 15 U.S.C. § 1635(a). TILA and Regulation Z require the lender to provide a form – the NORTC – stating the specific date on which the three-day rescission period expires. *Id.*; 12 C.F.R. § 226.23(b)(5). If the lender omits the expiration date and fails to cure this omission by subsequently providing the information, the borrower may rescind the loan within three years from the date of closing. 15 U.S.C. §§1635(a), (f).

In this case, the principal issue for the court to address is whether, at the loan's closing, plaintiffs were provided with NORTC forms that clearly and conspicuously disclosed the date the rescission period expired. Plaintiffs have come

forward with undisputed evidence showing that the NORTC forms they received at the closing failed to disclose the date the plaintiffs' rescission period expired in direct violation of 12 C.F.R. § 226.23(b)(5). Specifically, plaintiffs have submitted four NORTC forms that they received at the closing (the "borrower's forms"). (O'Reilly Decl., Ex. H [Aff. Artemia Rojo, Ex. A]) (Docket #31-8). These NORTC forms clearly do not disclose the date upon which the right to rescission would expire. (*Id.*). Furthermore, plaintiffs submitted the sworn statement of Artemia Rojo, attesting to the following facts: (1) the four NORTC forms attached to her affidavit were the only NORTC forms plaintiffs received and retained at the closing; (2) plaintiffs signed the two other NORTC forms initially given to them at the closing and returned them to the closing agent; (3) all six NORTC forms from the closing contained a closing date of March 19, 2007; and (4) none of the NORTC forms contained a date upon which the right to rescission would expire. (*Id.* at ¶¶ 8-12). As such, plaintiffs have met their initial burden as the moving party, demonstrating that there is no genuine dispute that plaintiffs received NORTC forms in violation of TILA.

Defendants, however, have failed in their burden to set forth specific facts showing that there is a genuine issue for trial with regard to whether the plaintiffs were supplied with adequate TILA disclosures. In their opposing memorandum, defendants fail to address in any relevant way the NORTC forms submitted by plaintiffs in support of their motion for summary judgment. The defendants do not contest that these NORTC forms failed to disclose the date the rescission period

was to expire. Nor do the defendants contend that the plaintiffs received other NORTC forms at the closing that did disclose the date the rescission period was to expire. Instead, the defendants present numerous irrelevant and misguided arguments.

First, it should be noted that the borrower's forms are not the only NORTC forms involved in this dispute. The record contains two NORTC forms that defendants possessed in their loan file that differ from the borrower's forms. These NORTC forms (the "lender's forms") include initials and a handwritten correction of the closing date and a handwritten rescission date. (O'Reilly Decl., Ex. E) (Docket #31-5). Yet, the defendants avoid arguing that the plaintiffs actually received the lender's forms at the closing. Instead, they merely state that the plaintiffs produced these documents in discovery.[1]

Furthermore, with regard to the lender's forms, plaintiff Artemia Rojo testified that the NORTC forms that she and her husband signed at the closing did not have any handwritten corrections, that neither she nor her husband initialed any handwritten corrections on any NORTC forms, including those that the closing agent retained, and that the handwritten initials above the handwritten closing date are not

_____

[1]Much of the defendants' motion for summary judgment and their arguments in opposition to plaintiffs' motion for summary judgment is focused on the fact that plaintiffs, in response to a discovery request, produced the lender's forms. Defendants appear to assume that plaintiffs' production of the lender's forms indicates plaintiffs received these forms at the closing. Yet, defendants refrain from arguing as much. However, plaintiffs clarify that the lender's copies that plaintiffs provided to defendants in January 2011, were initially provided by defendants to plaintiffs pursuant to discovery requests in June of 2010 and were not among the NORTC forms retained by plaintiffs after the closing. (Pls.' Br. in Opp. Defs.' Mot. Summ. J. at 12).

the initials of either her or her husband. (O'Reilly Decl., Ex. H [Aff. Artemia Rojo, Ex. A at ¶¶ 8-12]) (Docket #31-8). As previously noted, the plaintiffs have also submitted the NORTC forms they claim they were provided at the closing, all of which contain no rescission date. (*Id.*). Thus, while defendants have produced NORTC forms from their own loan file that appear to comply with the TILA disclosure requirements, defendants have not offered specific evidence that creates a genuine dispute for trial as to which NORTC forms plaintiffs received at the closing or the content of those forms.

In an attempt to defeat summary judgment in favor of the plaintiffs, the defendants argue that plaintiffs have improperly asserted two new claims at this late stage in the proceedings. Defendants assert that plaintiffs' are only now alleging that the lender's forms were fraudulently completed and that they received two versions of the NORTC forms which resulted in confusion and violated the clear and conspicuous disclosure requirement of TILA and Regulation Z. Defendants claim that such belated additional theories of liability have deprived them of meaningful notice of the claims against them. Furthermore, defendants contend that because one of plaintiffs' new claims is based on fraud, defendants were entitled to heightened, particularized notice of the plaintiffs' allegations at the pleading stage pursuant to Fed.R.Civ.P. 9(b).

This argument is misleading. Plaintiffs are not alleging a new claim of fraud at this stage of the proceedings. Admittedly, their memoranda could be read to

imply that the lender's forms were fraudulently completed – that someone other than plaintiffs forged their initials and made handwritten corrections to dates. Yet, the court finds plaintiffs' statements regarding the lender's forms were not made in an attempt to expand their theory of liability, but rather as an explanation of the evidence and its significance to this case. And, more importantly, because defendants have not asserted that plaintiffs received the lender's forms at the closing, the question of whether the lender's forms were completed fraudulently is not entirely relevant to a determination of whether a violation of the TILA disclosure requirements occurred. Thus, because it is undisputed that the borrower's forms were the only NORTC forms provided to and retained by the plaintiffs after the closing, the court's focus on the borrower's forms, rather than the lender's forms, is proper in its determination of whether a TILA disclosure violation occurred.

Moreover, the plaintiffs' allegedly new claim of confusion is not a new claim at all but simply an alternative argument, a tactic used by litigants quite frequently. In fact, the "new" argument is still premised on the underlying claim that plaintiffs did not receive an adequate disclosure of the rescission deadline. Plaintiffs' main theory is that they only received the borrower's forms at the closing and that these forms contained a clear violation of the TILA disclosure requirements. Alternatively, plaintiffs argue that, even if the court finds plaintiffs also received the lender's forms at the closing in conjunction with the borrower's forms, the two versions of the forms, when viewed together, were not a clear and conspicuous disclosure of plaintiffs'

rescission rights. *See Handy v. Anchor Mortg. Corp.*, 464 F.3d 760, 764 (7th Cir. 2006) (reversing judgment for defendant mortgagee because providing two different notices of right to rescind failed to clearly and conspicuously disclose right to rescind). In any event, the defendants have not so much as suggested that plaintiffs received the lender's forms at the closing. And, plaintiffs have offered undisputed evidence that they only received the borrower's forms at the closing. Therefore, there is no need to consider this matter further. In sum, the plaintiffs' claims in their motion for summary judgment are not inconsistent with the plaintiffs' claims in their amended complaint. Defendants were given adequate notice of the claims against them and the facts supporting those claims.

Another argument posited by defendants in opposing the plaintiffs' motion is that plaintiffs have failed to rebut the presumption of receipt.[2] Defendants also assert this argument in their motion for summary judgment. TILA provides that "[n]otwithstanding any rule of evidence, written acknowledgment of receipt of any disclosures required under this subchapter by a person to whom information, forms,

---

[2]Again, the defendants attempt to blur the issues by arguing that the presumption has not been overcome because plaintiffs have offered only their own self-serving testimony that the NORTC forms *produced by defendants* are not authentic. (Defs.' Mem. Opp. Pls.' Mot. Summ. J. at 10). Yet, as previously noted, the authenticity of the lender's forms is not the principal issue here because defendants have not even suggested that the plaintiffs received the lender's forms at the closing. The real inquiry is whether plaintiffs have presented sufficient evidence demonstrating that, despite their signing of the acknowledgment of receipt, the disclosures *provided to the plaintiffs* at the closing did not state specifically the last date on which the borrower could rescind the loan agreement in violation of TILA. Moreover, the defendants fail to account for the fact that plaintiffs have offered more than just their own undisputed testimony to overcome the presumption, but that they have also produced four incomplete copies of the NORTC that they received at the closing.

and a statement is required to be given pursuant to this section does no more than create a rebuttable presumption of delivery thereof." 15 U.S.C. § 1635(c). In this case, plaintiffs both signed an acknowledgment that they each received "all applicable disclosures" required by TILA (Tillman Decl., Ex. C) (Docket #35-3), and that they received "two completed copies of the [NORTC]." (O'Reilly Decl., Ex. E) (Docket #31-5). Thus, there is a rebuttable presumption that Artemia and Ignacio Rojo received all the applicable TILA disclosures, including two completed copies of the NORTC with the date that their rescission rights were to expire.

The statute and regulations are silent as to what evidence is necessary to overcome the rebuttable presumption established by TILA. This court has recently held that, in order to rebut the presumption, a party must demonstrate there is sufficient evidence in that party's favor for a jury to return a verdict for that party. *Marr v. John Does 1-5*, No. 09-CV-228, 2011 WL 382133, at *3 n. 3 (E.D. Wis. Feb. 3, 2011). Contrary to defendants' argument, plaintiffs have offered more than their own testimony stating they did not receive the requisite disclosures. Plaintiffs have also produced copies of the NORTC forms that they claim they received at the closing. These forms clearly omit the specific date on which the three-day rescission period expires. Furthermore, defendants have offered no evidence that conflicts with the plaintiffs' evidence in this regard, other than the fact that plaintiffs signed an acknowledgment of receipt. Therefore, after examining the evidence, the court finds plaintiffs have not only offered sufficient evidence that adequately contradicts the

presumption of receipt, but also that plaintiffs have submitted enough undisputed evidence to conclusively establish that the NORTC forms provided to and kept by plaintiffs at the closing violated the TILA disclosure requirements.

As such, plaintiffs' right to rescind the mortgage was extended for a period of three years. However, plaintiffs' timely demand for rescission was refused by defendants. Because plaintiffs' rescission demand was a valid demand for rescission, based on the defendants' violation of the TILA requirement of a clear and conspicuous disclosure of the last date on which a borrower may rescind the loan agreement, the failure to honor that demand was a further violation of TILA.

## II.    Remedies

Having established that a violation of TILA occurred, the court must now turn to the issue of remedies. In this case, the plaintiffs seek statutory damages, attorney fees, and rescission of their mortgage – namely, "the return to plaintiffs of all money paid to defendants in connection with the loan that was not applied to the principal amount of the loan or escrowed for property taxes or homeowner's insurance." (Am. Compl. ¶ 31). However, the issue of remedies is complicated by how the court construes the defendants – whether as creditors or assignees.

In this case, it is undisputed that defendant Bank of America was an assignee of the plaintiffs' loan. On the other hand, the parties dispute whether Bear Stearns was an assignee of the loan. Plaintiffs contend that Bear Stearns was the originator of the loan because it admitted in discovery that it was the originating lender of

plaintiffs' loan.  However, this argument is misleading.  In response to plaintiffs' discovery request stating "defendant is the person or entity who originated the mortgage loan at issue in this action," the defendants merely admitted that the loan "was originated by Encore Credit Corp., a division of Bear Stearns Residential Mortgage Corporation." (O'Reilly Decl., Ex. B at 6) (Docket #31-2). While a division of a corporation has no separate legal existence apart from its parent corporation, the key fact that plaintiffs omit from their argument is that Encore was not a division of Bear Stearns at the time the loan was originated. Instead, over seven months after the plaintiffs' closing of the loan transaction, Bear Stearns purchased certain assets of Encore – including plaintiffs' loan – and only then made Encore a division of Bear Stearns.  (Caldie Decl. ¶ 5, Ex. B) (Docket #47). Thus, Bear Stearns was not the originator of the loan.  Rather, Bear Stearns is a successor to the interests of Encore due to its purchase of Encore's assets after the loan was originated.

While neither TILA nor Regulation Z define the term "assignee," 12 C.F.R. § 226.2(b)(3) notes that any term not defined in the statute or regulations is to have the meaning given to it by state law or contract. The Supreme Court has held that the usual definition of "assignee" in "legal and ordinary usage" is "one to whom a right or property is legally transferred." *Holywell Corp. v. Smith*, 503 U.S. 47, 53 (1992) (quoting Webster's Third New International Dictionary 132 (1986)). Applying this definition, Bear Stearns was an assignee when it purchased certain assets from Encore because Encore transferred rights and property to Bear Stearns, including

the plaintiffs' mortgage. The court will now turn to how the defendants' status as assignees affects their liability in this case.

There is a separate provision in TILA specifically stating the obligations of loan assignees. 15 U.S.C. § 1641. Pursuant to TILA, an assignee of a mortgage is "subject to all claims and defenses with respect to that mortgage that the consumer could assert against the creditor of the mortgage. . ." 15 U.S.C. § 1641(d)(1). However, there are some limitations on an assignee's liability under TILA.

Defendants argue that as assignees of the plaintiffs' loan, the defendants cannot be held liable under TILA unless the violations alleged are apparent on the face of the documents assigned to them. Defendants point to language in § 1641(a), which states that any action for a violation of TILA which may be brought against a creditor may be maintained against an assignee of such creditor only if the violation for which such action is brought is "apparent on the face of the disclosure statement." 15 U.S.C. § 1641(a). Defendants argue they are entitled to summary judgment on plaintiffs' claim because the lender's forms – the only NORTC forms provided to defendants in connection with the assignment of plaintiffs' loan – bear no sign of the TILA violation alleged in this case.[3]

_____

[3]Defendants also raise this argument in their Reply Memorandum in Support of the Defendants' Motion for Summary Judgment. Yet, defendants failed to raise the argument in their opening memorandum. Generally, a party cannot raise a new argument in its reply brief, and to the extent that it does, the argument is deemed waived. *Hernandez v. Cook Cnty. Sheriff's Office*, 634 F.3d 906, 913 (7th Cir. 2011). Fortunately for defendants, they have timely asserted the argument in opposition to plaintiffs' motion for summary judgment and, thus, the argument is properly before the court.

However, an exception to § 1641(a) exists under § 1641(c) and makes the right to rescission under § 1635(c) equally enforceable against original creditors and assignees. *See Fairbanks Capital Corp. v. Jenkins*, 225 F.Supp.2d 910, 913 (N.D.Ill. 2002); *In re Bumpers*, No. 03-CV- 111, 2003 WL 22119929, at *5 n. 2 (N.D.Ill. Sept. 11, 2003); *Pulphus v. Sullivan*, No. 02-CV-5794, 2003 WL 1964333, at *16 (N.D.Ill. April 28, 2003). In other words, a borrower's right to rescission is unaffected by an assignment and the underlying violation need not be apparent on the face of the assigned documents. According to § 1641(c), "any [debtor] who has the right to rescind a transaction under section 1635 of this title may rescind the transaction as against *any* assignee of the obligation." 15 U.S.C. § 1641(c) (emphasis added). Accordingly, § 1641(c) refutes the defendants' claims of absolute protection from plaintiffs' claim of rescission, even if the court were to find that the violation is not apparent on the face of the document presented to the assignees – in this case, the lender's NORTC forms.[4]

Defendants further contend that rescission is an inappropriate, if not impossible, remedy because the defendants no longer hold the mortgage as plaintiffs refinanced their loan with Countrywide Bank on August 29, 2008, and the

[4]The legislative history of § 1641 supports this position. Senate reports show that § 1641(c) was added in 1980 by Congress to "eliminate ambiguity on the question of assignee liability for rescission by stating explicitly that a consumer's exercise of this right is effective against an assignee." *Stone v. Mehlberg,* 728 F.Supp. 1341, 1348 (W.D.Mich. 1989) (citing S. Rep. No. 96-368, 96th Cong., 2d Sess. 32-33, *reprinted in* 1980 U.S.C.C.A.N. 236, 268). To allow assignees "to assert their status to foil an otherwise meritorious rescission action would gut 15 U.S.C. § 1641(c)" and "sanction a situation in which 'the right of rescission would provide little or no effective remedy.'" *Id.* (quoting S. Rep. No. 96-368, 96th Cong., 2d Sess. 32-33, *reprinted in* 1980 U.S.C.C.A.N. 236, 268).

refinancing resulted in the defendants' loans being repaid in full. Defendants cite to *Bills v. BNC Mortg., Inc.,* 502 F.Supp.2d 773 (N.D. Ill. 2007), as support for this contention. In *Bills,* the court held that an assignee was not subject to plaintiffs' claim for rescission because the assignee no longer held the mortgage. *Id.* at 777. However, the court's holding in *Bills* lacks further analysis, and it appears to be in direct conflict with the Seventh Circuit's ruling in *Handy v. Anchor Mortg. Corp.,* 464 F.3d 760, 765-66 (7th Cir. 2006). In *Handy,* the Seventh Circuit held that "the remedies associated with rescission remain available even after the subject loan has been paid off." *Id.* The court proceeded to note that "the right to rescission 'encompasses a right to return to the status quo that existed before the loan.'" *Id.* (quoting *Barrett v. JP Morgan Chase Bank, N.A.,* 445 F.3d 874, 880 (6th Cir. 2006)). Therefore, even though plaintiffs refinanced their loan with Countrywide Bank, the plaintiffs are entitled to rescission and defendants must honor all of plaintiffs' rescission remedies.

To properly effectuate plaintiffs' timely invoked right to rescission, the defendants must determine the amounts of interest and fees that they received from plaintiffs while the loan was outstanding and reimburse plaintiffs in those amounts. *See Handy,* 464 F.3d at 766 ("Given the statute, [defendant] forfeits its right to collect interest, and so it must reimburse [plaintiff] for any interest paid while the loan was outstanding"); *see also Miranda v. Universal Financial Group, Inc.,* 459 F.Supp.2d 760, 765 (N.D.Ill. 2006) ("Under § 1635(b), a borrower who exercises the

right to rescind is entitled to the return of any payments made on the loan"). Only then can the parties be returned to the status quo that existed before the loan was made.

Additionally, the parties should keep in mind that rescission under TILA is considered a purely personal remedy. *Andrews v. Chevy Chase Bank*, 545 F.3d 570, 573 (7th Cir. 2008). Thus, rescission is intended to operate privately, at least initially, "'with the creditor and debtor working out the logistics of a given rescission.'" *Id.* at 574 (quoting *McKenna v. First Horizon Home Loan Corp.*, 475 F.3d 418, 421 (1st Cir. 2007)). The statute sets forth certain deadlines and duties that apply to the creditor upon receipt of a notice of rescission from the debtor. *See* § 1635(b). These procedures apply "except when otherwise ordered by a court." *Id.* As such, the court directs the parties to attempt resolution of the rescission privately in accordance with the court's order and following the procedures set forth in § 1635(b). If a disagreement over the particulars of the rescission should arise, only then should the parties request the court's assistance in tailoring a remedy.

While the right to rescission is equally enforceable against creditors and assignees, unlike a creditor, an assignee is not liable for statutory damages based on the underlying TILA violation unless it is apparent on the face of the disclosure statement or assigned documents. 15 U.S.C. § 1641(a); *see Taylor v. Quality Hyundai, Inc.*, 150 F.3d 689, 691-92 (7th Cir.1998) (affirming dismissal as to assignees from whom plaintiffs sought damages because TILA precludes liability

unless violation apparent on face of disclosure statement or other assigned documents). Here, the court concludes that the underlying TILA violation was not apparent on the face of the assigned documents. There is no dispute that the only NORTC forms received by defendants, as assignees, were the lender's forms. These forms contained handwritten alterations to the date of closing and the final date to rescind the loan. Though plaintiffs have implied that the lender's forms may have been altered by someone other than the plaintiffs after the closing, they have not made the argument that the handwritten alterations to the lender's NORTC forms would have been spotted by a reasonable person as a potential violation of the TILA. Consequently, because the TILA violation was not apparent on the face of the assigned NORTC forms, the plaintiffs are not entitled to statutory damages on the underlying TILA violation.

The question of whether assignees are liable for statutory damages for their failure to rescind upon receipt of a timely rescission demand, as well as the question of liability for attorney's fees, have been resolved by several courts based on whether the underlying TILA violation was apparent on the face of the assigned document. Assignees generally have not been held liable for statutory damages for failure to rescind or for attorney's fees where the underlying TILA violation was not apparent on the face of the document in question. *See Bills,* 502 F.Supp.2d at 776-77; *Walker v. Gateway Financial Corp.,* 286 F.Supp.2d 965, 968-69 (N.D.Ill. 2003). On the other hand, assignees have been found liable as to those remedies

where the underlying violation was facially apparent. *See Lippner v. Deutsche Bank National Trust Co.*, 544 F.Supp.2d 695, 704 (N.D.Ill. 2008). While this court agrees that assignees should not be held liable for statutory damages for failure to rescind when the underlying violation was not facially apparent to the assignee, the court sides with those courts that have awarded attorney's fees to a consumer who has successfully achieved court action to enforce her TILA rights, despite the fact that a violation is not facially apparent. *See e.g. Fairbanks Capital Corp.*, 225 F.Supp.2d at 917 (concluding that an assignee that refuses to honor a proper demand for rescission may in fact be held liable under the TILA for attorney's fees); *Payton v. New Century Mortg. Corp.,* 2003 WL 22349118, at *7-8 (Oct. 14, 2003) (finding that statutory damages could not be imposed on assignee because violation was not apparent on its face, but that award of attorney's fees against assignee was appropriate because plaintiff had brought a successful action for rescission). As the court explained in *Fairbanks*, "denying a consumer whose demand for rescission was refused by an assignee the ability to recover attorney's fees upon successful court action to enforce her TILA rights would undermine the policies underlying the TILA and its private enforcement mechanism" and "chill[] [consumers] from seeking enforcement even in meritorious cases, as it is common for TILA plaintiffs to be persons of limited means who are unable to finance expensive litigation." 225 F.Supp.2d at 917. Accordingly, though plaintiffs are not entitled to statutory damages for the defendants' failure to rescind the transaction, plaintiffs are entitled

to reasonable attorney's fees because they have brought a successful action for rescission.

Accordingly,

**IT IS ORDERED** that plaintiffs' motion for summary judgment (Docket #28) be and the same is hereby **GRANTED**; plaintiffs are entitled to rescission of their mortgage pursuant to 15 U.S.C. § 1635 and to reasonable attorney's fees;

**IT IS FURTHER ORDERED** that defendants' motion for summary judgment (Docket #32) be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED** on its merits together with costs as taxed by the clerk of the court.

The clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 30th day of June, 2011.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge